## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC SABATINI, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>CORINDUS VASCULAR ROBOTICS, INC., )<br>JEFFREY C. LIGHTCAP, MARK J. )<br>TOLAND, JEFFREY G. GOLD, )<br>CAMPBELL ROGERS, LOUIS A. )<br>CANNON, NATHAN R. HARRINGTON, )<br>JAMES TOBIN, and DOUGLAS L. )<br>BRAUNSTEIN, )<br><br>Defendants. ) | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on August 8, 2019 (the "Proposed Transaction"), pursuant to which Corindus Vascular Robotics, Inc. ("Corindus" or the "Company") will be acquired by Siemens Medical Solutions UA, Inc. ("Parent") and Corpus Merger, Inc. ("Merger Sub," and together with Parent, "Siemens").

2.     On August 7, 2019, Corindus's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Siemens.  Pursuant to the terms of the Merger Agreement, Corindus's stockholders will receive $4.28 in cash for each share of Corindus common stock they own.

3. On August 30, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Corindus common stock.

9. Defendant Corindus is a Delaware corporation and maintains its principal executive offices at 309 Waverley Oaks Road, Suite 105, Waltham, Massachusetts 02452. Corindus's

common stock is traded on the New York Stock Exchange American under the ticker symbol "CVRS."

10.    Defendant Jeffrey C. Lightcap is Chairman of the Board of the Company.

11.    Defendant Mark J. Toland is Chief Executive Officer, President, and a director of the Company.

12.    Defendant Jeffrey G. Gold is a director of the Company.

13.    Defendant Campbell Rogers is a director of the Company.

14.    Defendant Louis A. Cannon is a director of the Company.

15.    Defendant Nathan R. Harrington is a director of the Company.

16.    Defendant James Tobin is a director of the Company.

17.    Defendant Douglas L. Braunstein is a director of the Company.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Corindus (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.    This action is properly maintainable as a class action.

21.    The Class is so numerous that joinder of all members is impracticable. As of August 5, 2019, there were approximately 208,533,915 shares of Corindus common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.    Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

26.    Corindus is a global technology leader in robotic-assisted vascular interventions.

27.    The Company's CorPath® platform is the first FDA-cleared medical device to bring robotic precision to percutaneous coronary and vascular procedures.

28.    CorPath GRX is the second-generation robotic-assisted technology offering enhancements to the platform by adding important key upgrades that increase precision, improve

workflow, and extend the capabilities and range of procedures that can be performed robotically.

29.     On August 7, 2019, Corindus's Board caused the Company to enter into the Merger Agreement with Siemens.

30.     Pursuant to the terms of the Merger Agreement, Corindus's stockholders will receive $4.28 in cash for each share of Corindus common stock they own.

31.     According to the press release announcing the Proposed Transaction:

Corindus Vascular Robotics (NYSE American: CVRS), a leading developer of precision vascular robotics, today announced that it has entered into a definitive merger agreement to be acquired by Siemens Healthineers AG. Under the terms of the merger agreement, Siemens Medical Solutions, a wholly-owned subsidiary of Siemens Healthineers AG, a German stock listed company, will acquire all issued and outstanding shares of common stock of Corindus for $4.28 per share in cash, representing an aggregate purchase price of approximately $1.1 billion. . . .

The transaction has been approved by the Board of Directors of Corindus and is expected to close in the fourth quarter of 2019, subject to approval by Corindus stockholders, the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the satisfaction of other customary closing conditions.

In connection with the transaction, Citigroup Global Markets Inc. is acting as exclusive financial advisor to Corindus and Cadwalader, Wickersham & Taft LLP is serving as its legal advisor.

32.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 5.5(a) of the Merger Agreement provides:

From the date of this Agreement until the earlier of the Effective Time and the date, if any, on which this Agreement is terminated in accordance with Section 7.1, except as expressly provided in Section 5.5(b) or Section 5.5(d), (i) the Company shall immediately cease and cause to be terminated, and shall cause its Subsidiaries and instruct its and its Subsidiaries' Representatives to immediately cease and cause to be terminated, all existing activities, discussions, negotiations and communications, if any, with any Persons (or any of their Representatives) with respect to any Company Acquisition Proposal (other than Parent or any of its

Affiliates or Representatives with respect to the transactions contemplated by this Agreement); and (ii) the Company shall not, and shall not permit its Subsidiaries and its and its Subsidiaries' Representatives to, directly or indirectly, (A) initiate, seek, solicit, facilitate or knowingly encourage, or knowingly induce the making, submission or announcement of, any Company Acquisition Proposal, (B) enter into, continue or otherwise participate in any negotiations or discussions with, or furnish or cause to be furnished any non-public information or data to, or furnish access to the Company's (or any of its Subsidiaries') properties with respect to, any Person (other than Parent or any of its Affiliates or Representatives) relating to any Company Acquisition Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to any Company Acquisition Proposal (other than informing any Persons of the provisions of this Section 5.5), or grant any waiver or release under (or terminate, amend or modify any provision of) any confidentiality agreement to which the Company is a party except to the extent to allow an applicable party to make a Company Acquisition Proposal in compliance with Section 5.5(b), (C) execute or enter into any binding or non-binding letter of intent, agreement in principle, memorandum of understanding, merger agreement, acquisition agreement, option agreement, joint venture agreement, partnership agreement or other agreement, commitment, arrangement or understanding relating to or in connection with, or that is intended to lead to, any Company Acquisition Proposal (each, an "Alternative Acquisition Agreement"), (D) submit to the stockholders of the Company for their approval any Company Acquisition Proposal or Company Superior Proposal, or (E) resolve to do, or agree or publicly announce an intention to do, any of the foregoing.

33.     Additionally, the Company must promptly advise Siemens of any proposals or inquiries received from other parties.  Section 5.5(b) of the Merger Agreement states, in relevant part:

The Company (1) shall promptly (and in any case within forty-eight (48) hours) provide Parent notice (x) of the receipt of any Company Acquisition Proposal, which notice shall include, if applicable, a complete, unredacted copy of such Company Acquisition Proposal, and (y) of any inquiries, proposals or offers received by the Company, any of its Subsidiaries or any of its or its Subsidiaries' Representatives concerning a Company Acquisition Proposal or proposal that is reasonably likely to constitute or lead to or result in a Company Acquisition Proposal, and disclose the identity of the other party (or parties) and, if applicable, the material terms (including any amendments thereto) of such inquiry, offer or proposal (2) shall promptly (and in any case within forty-eight (48) hours) make available to Parent all information, including copies of all written materials, provided by the Company or any of its Subsidiaries or its or its Subsidiaries' Representatives to such party but not previously made available to Parent and (3) shall keep Parent reasonably informed on a reasonably prompt basis (and, in any case, within forty-eight (48) hours) of any significant development, discussions or

negotiations (including amendments and proposed amendments) relating to any such Company Acquisition Proposal or any material change to the financial or other material terms of any such Company Acquisition Proposal or such other inquiry, offer or proposal (including by providing copies of all required proposals related thereto that have not already been provided pursuant to clauses (1)(x) or (y) above, respectively).

34.     Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Siemens a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.5(d) of the Merger Agreement provides:

> Notwithstanding anything in this Agreement to the contrary, if at any time prior to the receipt of the Company Stockholder Approval, the Company or the Company Board receives a Company Superior Proposal, the Company Board may authorize and cause the Company to (i) effect a Company Adverse Recommendation Change and/or (ii) terminate this Agreement pursuant to Section 7.1(c)(ii) and concurrently with such termination enter into a definitive agreement providing for such Company Superior Proposal (subject to the satisfaction of its obligations under Section 7.3) if (A) the Company Board determines in good faith, after consultation with the Company's outside legal counsel, that the failure to take such action would reasonably be expected to be inconsistent with the Company Board's fiduciary duties under applicable Law; (B) the Company has notified Parent in writing that it intends to take such action; (C) the Company has provided Parent a copy of the proposed definitive agreements (and any related agreements) relating to such Company Superior Proposal (and has informed Parent of the identity of the Person making such Company Superior Proposal); and (D) if prior to 11:59 p.m., New York City time, on the second (2nd) Business Day following the notice delivered pursuant to clause (B) of this Section 5.5(d), the Company and its Representatives shall have received a written proposal made by Parent to amend this Agreement or enter into an alternative transaction with the Company, the Company Board shall have determined in good faith (after consultation with the Company's financial advisor and outside legal counsel), after considering and taking into account the terms of any proposed amendment or modification to this Agreement or a possible alternative transaction made by Parent in writing solely during such period, that (1) the Company Acquisition Proposal that is the subject of the notice described in clause (B) of this Section 5.5(d) still constitutes a Company Superior Proposal and (2) the failure to take such action would reasonably be expected to be inconsistent with the Company Board's fiduciary duties under applicable Law.

35.     The Merger Agreement also provides for a "termination fee" of $32,515,000 payable by the Company to Siemens if the Individual Defendants cause the Company to terminate

the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

36.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction.

37.     As set forth below, the Proxy Statement omits material information with respect to

the Proposed Transaction, which renders the Proxy Statement false and misleading.

38.     First, the Proxy Statement omits material information regarding the Company's

financial projections.

39.     The Proxy Statement fails to disclose: (i) projected free cash flow and all underlying

line items; (ii) all line items used to calculate EBITDA; and (iii) a reconciliation of all non-GAAP

to GAAP metrics.

40.     The disclosure of projected financial information is material because it provides

stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

41.     Second, the Proxy Statement omits material information regarding the analyses

performed by the Company's financial advisor in connection with the Proposed Transaction,

Citigroup Global Markets Inc. ("Citi").

42.     With respect to Citi's Selected Companies Analysis, the Proxy Statement fails to

disclose the individual multiples and metrics for the companies observed by Citi in the analysis.

43.     With respect to Citi's Selected Transactions Analysis, the Proxy Statement fails to

disclose the individual multiples and metrics for the transactions observed by Citi in the analysis.

44.     With respect to Citi's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the estimates of the unlevered free cash flows that Corindus is expected to generate during the period from July 1, 2019 through December 31, 2024 and all underlying line items; (ii) the range of terminal values for Corindus; (iii) the individual inputs and assumptions underlying the discount rates ranging from 10.9% to 13.0% and the perpetuity growth rates ranging from 5.0% to 6.0%; (iv) the benefits estimated to be realized from Corindus's net operating losses; and (v) the diluted share counts of Corindus.

45.     With respect to Citi's Equity Research Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Citi in the analysis; and (ii) the sources thereof.

46.     With respect to Citi's Implied Premia Paid, the Proxy Statement fails to disclose: (i) the transactions observed by Citi in the analysis; and (ii) the premiums paid in the transactions.

47.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48.     Third, the Proxy Statement omits material information regarding potential conflicts of interest of Citi.

49.     The Proxy Statement fails to disclose whether Citi has provided past services to the Company or its affiliates, as well as the timing and nature of such services and the amount of compensation Citi received for providing the services.

50.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

51.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; (iii) Opinion of Citigroup Global Markets Inc.; and (iv) Financial Projections.

52.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Corindus**

53.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Corindus is liable as the issuer of these statements.

55.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

56.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

57.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy

Statement and in other information reasonably available to stockholders.

58.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

59.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

60.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

61.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Corindus within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Corindus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

65.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 18, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

*Attorneys for Plaintiff*